ROYAL TAFT *vs.* ANANIAS GIFFORD & another.

D., as principal, and G., as surety, gave a joint note to T. in March 1841, payable in April 1842: In April 1843, T. demised a farm to D. for one year, by a written lease, which contained a provision that the produce and profits of the farm should be holden for the payment (among other debts of D.) of the aforesaid note: T. took no measures to obtain the produce of the farm, but permitted D. to dispose of it, without objection; and G. had no knowledge of said provision in the lease, until after D. had disposed of said produce. *Held*, in a suit by T. on the note that his omission to obtain the produce of the farm and apply it to the payment or part payment of the note, did not discharge G. from his liability to pay the note in full.

ASSUMPSIT on a joint and several note for $175, given to the plaintiff by Nelson Darling, as principal, and Ananias Gifford, as surety, dated March 8th 1841, and payable on the 1st of April 1842. The action was commenced in the court of common pleas, where Darling was defaulted, and Gifford made defence. At the trial, before *Washburn*, J. the defendant Gifford put into the case a lease made by the plaintiff to said Darling, dated April 8th 1843, demising to him, for one year from the first of said April, a farm in Uxbridge, and the buildings thereon, except certain rooms in one of the houses, &c. which the plaintiff reserved for his own use. The lease contained this clause : " Said lessee yielding and paying therefor, at the expiration of this lease, the sum of ninety five dollars ; and the produce and profits of the farm are holden for the payment of two certain notes of hand, one for ninety five dollars, bearing even date with this indenture, signed by said Darling, and the other for one hundred and seventy five dollars, and dated March 8th 1841, signed by said Darling and Ananias Gifford," &c. (the note in suit.) "And said Darling is to board said Taft, at $1·75 per week, as long as said Taft boards in said Darling's family, towards the ninety five dollar note."

It was contended by the defendant Gifford, that the plaintiff, having by said lease taken security, on the produce of the farm, for the payment of the note in suit, had permitted the produce to be disposed of, to the injury of said defendant, who was a surety on the note, and had thereby discharged his liability.

There was evidence tending to show that Darling occupied the farm, under said lease, and that the plaintiff boarded with him; that Darling raised crops of considerable value, some part of which were carried from the farm, or were sold, by him; and that the plaintiff knew that this was done, and made no objection.

The case was submitted to the jury, upon the following (among other) instructions : " That if the plaintiff took the pledge or mortgage of the produce of the farm, after the

note in suit was due and payable — unless it was known to the defendant, and he did something or omitted something in consequence of it — the defendant could not set up, in defence to this action, the fact that the plaintiff permitted Darling to carry off the produce without objection."

A verdict was returned for the plaintiff, for the full amount of the note; and, upon being questioned by the c urt, the jury stated that they found their verdict solely upon the ground that Gifford had no knowledge of the provisions of the lease, as to securing the note, until after the produce was disposed of by Darling.

The defendant Gifford alleged exceptions to the instructions given to the jury.

*B. F. Thomas & Hartshorn,* for Gifford. In equity, a surety is discharged by the principal's preventing him from having the benefit of collateral or other security. 1 Story on Eq. §§ 324 – 327, 477, 499 – 502, 638. *Copis* v. *Middleton,* Turn. & Russ. 229. *Belcher* v. *Hartford Bank,* 15 Connect. 381. *Hodgson* v. *Hodgson,* 2 Keen, 704. *Neimcewicz* v. *Gahn,* 3 Paige, 614. *American Bank* v. *Baker,* 4 Met. 175, and books there cited. *Hayes* v. *Ward,* 4 Johns. Ch. 130. *New London Bank* v. *Lee,* 11 Connect. 112. *Homer* v. *Savings Bank,* 7 Connect. 478. *Eastman* v. *Foster,* 8 Met. 19. *Law* v. *East India Co.* 4 Ves. 833.

The rule is the same at law. *Samuell* v. *Howarth,* 3 Meriv. 277. *Dunn* v. *Slee,* Holt N. P. 402. *Melvill* v. *Glendining,* 7 Taunt. 126. *Bardwell* v. *Lydall,* 5 Moore & Payne, 327, and 7 Bing. 489. *Baker* v. *Briggs,* 8 Pick. 122.

It is immaterial whether the surety knows of the security given to the principal; and therefore the instruction given to the jury, and upon which they found their verdict, was wrong.

In Sir Samuel Romilly's argument, in *Craythorne* v. *Swinburne,* 14 Ves. 162, he said, " a surety will be entitled to stand in the place of the creditor, not only through the medium of contract, but even by means of securities entered into without the knowledge of the surety." And this doctrine was approved by Lord Eldon, in the decision made by him in that

case, and in the case of *Mayhew* v. *Crickett*, 2 Swanst. 191. It was also approved by Lord Brougham, in *Hodgson* v. *Shaw*, 3 Myl. & K. 191.

Though the produce of the farm was not in existence when the hypothecation was made, yet the title to it passed, as between the parties. *Aliter*, perhaps, as to the creditors of Darling. *Butterfield* v. *Baker*, 5 Pick. 522. *Macomber* v *Parker*, 14 Pick. 497. *Lewis* v. *Lyman*, 22 Pick. 437. *Jones* v. *Richardson*, 10 Met. 481.

*Chapin*, for the plaintiff. This defence cannot be made to a joint action against both makers of the note. There cannot be two different judgments in such a case. *Baker* v. *Briggs*, 8 Pick. 128, 129. *Carpenter* v. *King*, 9 Met. 511, 517. Even in the case of a joint and several contract, this defence could not be maintained. Therefore a new trial should not be granted, even if the knowledge of the surety, that the plaintiff had obtained security by the provisions of the lease, was wrongly made, by the judge at the trial, an element in the decision.

The principles of the cases cited for the defendant may safely be admitted by the plaintiff; but the facts are, in none of them, like those in the case at bar. The lease, on which the defendant relies, was made more than two years after the note in suit was given, and about a year after it had fallen due ; and the provision in it for securing the note was not made for the benefit of the defendant. *Halford* v. *Byron*, Pre. Ch. 178. It is doubtful, perhaps, whether the plaintiff could have obtained any advantage from that provision if he had attempted so to do. See *Wait, Appellant*, 7 Pick. 100. *Butterfield* v. *Baker*, 5 Pick. 522. But if he could, yet he was not bound, as between himself and the surety, to the use of active diligence in obtaining that advantage. 1 Story on Eq. § 326. See also *Heath* v. *Key*, 1 Younge & Jerv. 434. *Wallwyn* v. *Coutts*, 3 Meriv. 707.

Shaw, C. J. In this suit on a joint note, made by the two defendants, as principal and surety, the principal has been defaulted, and the surety defends. His defence is placed on

the ground, that the plaintiff voluntarily relinquished a security which was given him by the principal, and from which the whole or a part of the amount of this note might have been realized; that, by a rule of equity, adopted as a rule of law, the defendant is discharged, in full or *pro tanto*. This security was supposed to arise from a promise in a lease of a farm, made by the plaintiff to Darling, the principal debtor on this note, by which it was stipulated that the produce and profits of the farm should be holden for the payment of two notes, one bearing even date with the lease, and the other, the note now in suit. There was a stipulation in the lease, that the lessor reserved certain apartments, in the house and stable, to his own use, with a right to board with the lessee, at a fixed rate per week. In all other respects, the possession of the demised premises passed by the lease, which was in the usual form, to the lessee. The plaintiff never took any of the produce into his own custody, nor received any of the profits, under this clause.

The court are of opinion, that the facts do not bring the case within the principle stated, even supposing — of which we give no opinion — that this would be a good defence, in a joint action, upon a joint note, against principal and surety. The plaintiff received nothing under this provision. It was a mere executory agreement, authorizing the plaintiff to take possession of the produce when it should come into existence; and if he had exercised that power, and taken such possession, before the right of any creditor or purchaser had intervened, it might have given him a lien. *Bartlett* v. *Williams*, 1 Pick. 288. But until possession taken, he had no lien, and could not hold the produce against a *bona fide* purchaser or attaching creditor. *Jones* v. *Richardson*, 10 Met. 481. And we think he was not bound to active diligence in availing himself of the power to obtain a lien, any more than the holder of a note, with a surety, is bound to active diligence in securing his note by attachment of the property of the principal, when he has an opportunity to do so. 1 Story on Eq. § 325. It was a collateral security, not given

at the time the note was made, but afterwards, and not taken with the knowledge or for the use and benefit of the surety. It was a means of obtaining a pledge, at the option of the plaintiff, of which he might have availed himself or not, but it did not constitute an actual security. The plaintiff's forbearing to act upon this executory agreement, and taking no measures to enforce it, was not such a voluntary relinquishment of any pledge or security as to bring the case within the principle relied on by the defendant.

*Exceptions overruled.*